IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **CHLOE MOORE**, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No: |
| | Hon. |
| v. | Mag. |
| **TRULIANT FEDERAL CREDIT UNION**, | |
| Defendant. | |

**<u>COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND</u>**

Plaintiff, Chloe Moore ("Plaintiff"), hereby brings this Collective and Class Action against Defendant Truliant Federal Credit Union ("Defendant"), and states as follows:

## <u>INTRODUCTION</u>

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and N.C. Gen. Stat. §§ 95-25.1, by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25, *et seq*. ("North Carolina Wage Act")

2. According to Defendant's website "Truliant offers honest, personalized advice to make members' financial futures brighter. [It] exists to help members achieve their dreams – and [it] often do[es] it better than the larger, national banks. Plus [it] offer[s] the latest online and mobile banking technology that lets members manage their money and busy family schedules."[1]

3. In providing the aforementioned services, Defendant employs hourly, non-exempt employees with a number of job titles, including but not limited to Contact Center Representatives and Collections Specialists (hereinafter collectively referred to as "Representatives"). Defendant employs its Representatives in their brick-and-mortar contact centers. Defendant relies heavily on Representatives to field and make calls to its clients and respond and/or troubleshoot its customers inquiries, requests and complaints, and log information about customer interactions into Defendant's systems.

4. Defendant employed Plaintiff as an hourly non-exempt Representative.

5. Defendant has employed hundreds of Representatives over the past three years to provide customer service support to Defendant's clients.

6. Regardless of the specific job title, all Representatives: (1) are paid on an hourly basis; (2) classified as non-exempt employees; (3) regularly worked forty (40) or more hours per workweek; (4) used the same timekeeping system; (5) used

---

[1] *See* https://www.truliantfcu.org/about-us (last visited Jun. 2, 2026).

many (if not all) of the same computer programs; (6) are subject to the same relevant timekeeping and attendance policies; and (7) have the primary job duty of providing assistance to Defendant's customers.

7. The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's Representatives, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[2]

8. One of those abuses, which is occurring in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

9. More specifically, DOL's Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

[2] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), (July 2008), https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers.

10. Throughout their employment with Defendant, Plaintiff and other Representatives were required to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

11. Defendant violated the FLSA and common law by systematically failing to compensate its Representatives for work tasks completed before and after their scheduled shifts when they were not logged into Defendant's timekeeping system. This policy resulted in Representatives not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime, and in non-overtime workweeks for regular hours.

12. More specifically, Defendant failed to compensate its Representatives for the substantial time they spent performing essential work tasks prior to clocking into and after clocking out of Defendant's timekeeping system each shift.

13. Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding them unpaid back wages, liquidated damages, attorneys' fees and costs to make them and the putative Collective and Class whole for damages they suffered, and any other remedies to which they are entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

## PARTIES

14. Plaintiff is a resident of East Bend, North Carolina. Plaintiff worked for Defendant as an hourly, non-exempt collections specialist from approximately January 2025, through March 2025. Defendant compensated Plaintiff through the payment of an hourly rate, most recently at $25.00 per hour. Plaintiff signed a consent to join this collective action, which is attached as **Exhibit A**.

15. Additional, putative collective members were or are employed by Defendant throughout the United States as non-exempt Representatives during the past three years and their consent forms will also be filed in this case.

16. Defendant Truliant Federal Credit Union ("Truliant") is federally chartered credit union organized and existing under the laws of the United States, with its headquarters and principal office located at 3200 Truliant Way, Winston-Salem, North Carolina 27103, and may be served through its authorized agents or officers.

## JURISDICTION AND VENUE

17. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

18. Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under

the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

19. Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's employees engaged in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

20. This Court has personal jurisdiction over Defendant because it conducts business within this District, employs individuals within this District, and maintains its principal place of business in this District.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c) because Defendant's principal place of business is located in this District and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

## GENERAL ALLEGATIONS

22. Prior to hiring prospective Representatives, including Plaintiff, Defendant provided them with a written offer setting forth the job title, the offered rate of pay, and the conditions of their employment.

23. Upon information and belief, Defendant maintained documents demonstrating the promised hourly wage for each Representative, including, but not limited to: offer letters, paystubs, and/or payroll records.

24. Plaintiff and the Representatives received offer letters from Defendant to work as Representatives, and they accepted Defendant's offers with the understanding that their base hourly rate would be paid for all hours worked.

25. Plaintiff and the Representatives performed under their respective agreements with Defendant carrying out their job duties and responsibilities. More specifically, Plaintiff and the Representatives handled customer inquiries and requests for service through various channels (live chat, phone, email, SMS); guided customers through banking services and a broad range of financial transactions; and resolved customer issues and escalating when necessary. The aforementioned customer service was provided via inbound calls, and Plaintiff would utilize Defendant's applications and systems to track all events and customer service information. Plaintiff and the Representatives additionally performed the required unpaid off-the-clock work explained below.

26. Defendant paid its Representatives varying hourly rates.

27. Plaintiff and Defendant's Representatives typically worked five (5) days each week and forty (40) hours per week.

28. There were one or more instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek.

29. Defendant provided training to Representatives, like Plaintiff, on, *inter alia*, how to carry out their day-to-day job duties, including how to load and log into

their computer programs at the beginning of the day, and how to log out at the end of each day; how to track their time in Defendant's timekeeping system; attendance, schedule and call quality expectations; and Defendant's policies related to each topic. The training that all Defendant's Representatives received was substantially, if not entirely, the same, and Defendant's Representatives, including Plaintiff, were subject to the same relevant policies and procedures.

30. To the extent that Defendant may have had written policies that required its employees to be paid for all hours worked, including overtime, the reality is that Defendant did not follow these policies, which resulted in Representatives, like Plaintiff, not being paid for all hours worked, including the off-the-clock work described herein.

31. At all relevant times, Defendant controlled Plaintiff's and all other Representatives' work schedules, duties, protocols, applications, assignments, and employment conditions.

32. Defendant required Plaintiff and all other Representatives to use a computer and a variety of integral and indispensable computer programs, applications, and servers that were necessary to the performance of their job duties.

33. Defendant instructed Plaintiff and all other Representatives to be "call ready" the moment their scheduled shift started. This required Plaintiff and the Representatives to load and log into essential work-related computer programs and

applications ***before*** the start of their shifts and ***before*** they were allowed to clock in so they could be prepared to field calls the moment their shift began.

34. Defendant further instructed Plaintiff and all other Representatives to arrive early before their scheduled shift start times so that they could complete the required pre-shift process and clock in on time. In practice, this instruction required Plaintiff and the Representatives to report to work before their scheduled shift start times, access Defendant's facility, report to their workstation, and complete the required boot-up and login process, in order to be prepared to begin taking calls the moment their scheduled shift began.

35. Defendant enforced their "call ready" policy through their uniform attendance, compensation, timekeeping, and schedule adherence procedures applicable to the Representatives.

36. Defendant additionally enforced its policy of requiring that all computer programs and applications be open and ready at the start of a Representative's scheduled shift through its schedule adherence and attendance metrics pursuant to which it monitored the Representatives' clock in times in relation to their start-of-shift times, as well as the time the Representatives went into a "ready" status.

37. Defendant enforced these policies and procedures by routinely evaluating, and at times disciplining, the Representatives.

38. Thus, Defendant forced Plaintiff and its Representatives to perform the boot-up and login process before the start of their shift and before they were allowed to clock in.

39. All of Defendant's Representatives used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and indispensable part of the Representatives' work, and they could not perform their jobs without them.

40. Similarly, Defendant's Representatives, including Plaintiff, performed work off-the-clock after their scheduled shift, after clocking out of Defendant's timekeeping system, when they shut-down/logged out of the programs and applications that they utilized during their shifts.

41. At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the Representatives in order to pressure them into performing pre-and post-shift work off-the-clock.

42. The pre- and post-shift off-the-clock time Plaintiff and all other Representatives spent booting up/logging into and shutting down their computers and applications and programs directly benefited Defendant and was integral and indispensable to the Representatives' job responsibilities.

43. As a result of the off-the-clock work described herein, Plaintiff and all

other Representatives were unlawfully deprived of approximately eleven (11) to twenty (20) minutes of compensation every day.

44. At all relevant times, Defendant was able to track the amount of time Plaintiff and other Representatives spent in connection with the pre- and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other Representatives for the off-the-clock work they performed, thus breaching it agreements with its Representatives.

45. Defendant knew or should have known that Plaintiff and other Representatives were performing this pre- and post-shift work, as it was required by Defendant's training and policies and was necessary for Representatives to perform their primary job duties.

46. Despite knowing Plaintiff and all other Representatives performed the pre- and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

47. At all relevant times, Defendant required and directly benefited from the off-the-clock work performed by Plaintiff and all other Representatives in connection with the pre- and post-shift activities described herein.

48. Indeed, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

49. Defendant has known or should have known that the time spent by Plaintiff and other Representatives in connection with the pre- and post-shift activities is compensable under the law.

50. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other Representatives booted up and logged into their computers each shift, along with the time they logged into the timekeeping system.

51. Because Defendant required its Representatives, including Plaintiff, to perform pre- and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are an inaccurate representation of the total amount of time Representatives spent working for Defendant. Thus, the hours reflected on the Representatives' paystubs are also inaccurate representations of the hours they actually worked.

52. Defendant's failure to pay Plaintiff and its Representatives for each hour of work performed and that was required of them as Representatives was a material breach by Defendant.

53. Plaintiff and all other Representatives earned these wages the moment they performed the off-the-clock work, and the wages were due to be paid to Plaintiff and all other Representatives no later than the pay day for the period in which the off-the-clock work was performed.

54. Despite the fact that Plaintiff and all other Representatives performed off-the-clock work pre- and post-shift these off-the-clock hours were not peripheral tasks for which they were not owed compensation. Instead, the off-the-clock hours, which were performed by Plaintiff, and all other Representatives pursuant to not only their agreements with Defendant, but Defendant's verbal and/or written policies, training and direction, constituted principal work activities that were integral and indispensable to their work, and Defendant was contractually obligated to compensate its Representatives for their hours worked at their applicable regular and overtime hourly rates at which they were employed.

**A. <u>Pre-Shift Off-the-Clock Work</u>**

55. Before arriving to their computers, Representatives, including Plaintiff, were required to enter Defendant's facility and pass through secured areas, including by swiping their badges as two separate locations, before proceeding to their workstations. Upon arriving to their computers, Defendant's Representatives were trained and required to follow a specific protocol to start up and log into Defendant's network and numerous software programs to access the necessary information to perform their job duties.

56. After completing the required badge swipes and arriving at their workstations, and before each shift, Representatives were required to undertake essential work tasks, which generally consisted of the following steps: set up and

connect their laptop to Defendant's system; turn on or wake up their computer; open various programs and applications that were integral and indispensable to their job duties as Representatives, including but not limited to, the timekeeping system and the phone system.

57. Only once all applications were open and loaded, could Plaintiff and the Representatives clock in.

58. Defendant's Representatives had to complete much, if not all, of this process ***before***: (1) the start of their scheduled shifts; (2) they were allowed to clock into Defendant's timekeeping program; and (3) fielding calls.

59. The boot-up and login process described above took substantial time on a daily basis, ranging from ten (10) to fifteen (15) minutes per shift or more, depending on how fast/slow the computers, systems and programs were operating.

60. Defendant's Representatives were not compensated for all of this time because, among other things, Defendant prohibited Representatives from clocking into their timekeeping software until a limited and finite number of minutes before the start of their scheduled shifts, and the boot-up process took longer than this amount of time to perform each shift.

61. The pre-shift off-the-clock work Representatives performed directly benefited Defendant and was integral and indispensable to their job duties and responsibilities as Representatives.

62. Thus, in workweeks where Defendant's Representatives worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; (2) pay them straight time for all regular hours worked up to forty (40) (overtime gap time); and (3) record all of the time that their Representatives, including Plaintiff, worked for Defendant's benefit.

63. If Representatives started logging in immediately prior to their scheduled shifts, they were in danger of clocking in late because they could not complete the required pre-shift work necessary to be "call ready" when their scheduled shifts began and it was time to clock in, and they would therefore receive a tardy on their records and poor schedule adherence scores.

64. Because Defendant's Representatives typically worked scheduled shifts of at least 40 hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

65. Defendant had express and constructive knowledge that its Representatives began the pre-shift boot-up and login process while off-the-clock in order to make sure they were "call ready" and clocked in on time.

66. Defendant's policies and practices discouraged its Representatives

from recording all time worked.

67. The pre-shift off-the-clock work Representatives performed directly benefited Defendant and was integral and indispensable to their job duties and responsibilities.

**B. Post-Shift Off-the-Clock Work**

68. Pursuant to Defendant's policies, training, and direction, Plaintiff and all other Representatives were required to clock out the moment their scheduled shift concluded when they finished fielding their last customer call for the shift and before completing call documentation, sending emails, closing programs and applications they used during their scheduled shift, and shutting down their system.

69. This resulted in Plaintiff and Representatives performing approximately one (1) to five (5) minutes of off-the-clock work every shift.

70. Thus, in workweeks where Defendant's Representatives worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; (2) pay them straight time for all regular hours worked up to forty (40); and (3) record all of the time that its Representatives, including Plaintiff, worked for Defendant's benefit.

71. The post-shift off-the-clock work Plaintiff and other Representatives performed was compensable, directly benefited Defendant, and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the Representatives' job duties and responsibilities.

### C. <u>The Off-the-Clock Work Results in Viable "Gap Time" Claims</u>

72. "There are two types of gap time claims: pure gap time claims – when an employee has not worked more than 40 hours in a workweek and seeks compensation for unpaid hours – and overtime gap time claims – when an employee has worked more than 40 hours in a workweek but nevertheless has not been paid for all of the regular-time hours that she worked at the regular wage rate." *Athan v. United States Steel*, 354 F. Supp. 3d 748, 754 (E.D. Mich. 2019).

73. Plaintiff, and similarly situated Representatives, regularly worked non-overtime hours (i.e., "gap time") for which they were not paid.

74. During the weeks that Representatives do not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices were a deprivation of straight-time wages, in breach of Defendant's contracts with their Representatives.

## <u>FLSA COLLECTIVE ACTION ALLEGATIONS</u>

75. Pursuant to 29 U.S.C § 216(b), Plaintiff brings this action on behalf of:

> *All current and former hourly Representatives who worked for Defendant at any time during the past three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

76. Defendant is liable under the FLSA, for *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

77. Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside salespersons.

78. Consistent with Defendant's policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all straight and premium overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

79. All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work Plaintiff and the proposed FLSA Collective performed.

80. Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

81. As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

b. Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members, for all overtime gap time; and

c. Willfully failing to record all of the time that its employees, including Plaintiff and the FLSA Collective members, have worked for the benefit of Defendant.

82. Defendant's unlawful conduct has been widespread, repeated, and consistent.

83. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

84. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate

of pay. The key issue — whether the amount of uncompensated pre- and post-shift off-the-clock work — does not vary substantially among the proposed FLSA Collective.

85. Plaintiff estimates the FLSA Collective, including both current and former Representatives over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

86. Upon information and belief, Defendant utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner.

87. These similarly situated individuals are known to the Defendant, are readily identifiable, and can be located through Defendant's payroll records, which Defendant is required to maintain pursuant to the FLSA. 29 U.S.C. § 2119(c); 29 C.F.R. § 516 *et seq*.

88. The FLSA Collective should be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216. Unless, the Court promptly issues such notice, the FLSA Collective members, who were lawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which Defendant unlawfully withheld from them.

## RULE 23 NORTH CAROLINA CLASS ACTION ALLEGATIONS

89. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former hourly Representatives who work or have worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 North Carolina Class"). Plaintiff reserves the right to amend this definition if necessary.

90. The members of the Rule 23 North Carolina Class are so numerous that joinder of all Rule 23 North Carolina Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds or thousands of Rule 23 North Carolina Class members. Rule 23 North Carolina Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

91. There is a well-defined community of interests among Rule 23 North Carolina Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 North Carolina Class. These common legal and factual questions include, but are not limited to, the following:

a. Whether the pre-shift time Rule 23 North Carolina Class members spent on startup and login activities each shift is compensable time under applicable law;

b. Whether the Rule 23 North Carolina Class members are owed wages for off-the-clock time worked in connection with the activities described in this Complaint;

c. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 North Carolina Class member regular wages or minimum wages for each non-overtime hour worked; and

d. The proper measure of damages sustained by the Rule 23 North Carolina Class.

92. Plaintiff's claims are typical of those of the Rule 23 North Carolina Class in that they and all other Rule 23 North Carolina Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 North Carolina Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 North Carolina Class members.

93. Plaintiff will fully and adequately protect the interests of the Rule 23 North Carolina Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 North Carolina Class.

94. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 North Carolina Class members to prosecute individual actions

of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

95. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

96. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

97. Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 North Carolina Class and declaratory relief is appropriate in this case with respect to the Rule 23 North Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq.* -- FAILURE TO PAY OVERTIME

98. Plaintiff re-alleges and incorporates all previous paragraphs herein.

99. At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

100. At all times relevant to this action, Defendant was engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

101. At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

102. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

103. Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

104. Plaintiff either: 1) engaged in commerce; 2) engaged in the production of goods for commerce; or 3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

105. The FLSA requires an employer to pay employees for all hours worked at the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

106. The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R.

516.1, *et seq*.

107. At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the FLSA Collective members to work off-the-clock every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where it occurred and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

108. The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective was an essential part of their jobs and these activities, and the time associated with these activities was significant.

109. In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work should have been paid at the federally mandated rate of 1.5 times each employee's regular rate of pay. 29 U.S.C. § 207. Further, all "overtime gap time" should have been paid at Plaintiff and the FLSA Collective's regular hourly rate.

110. Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities but did not.

111. As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendant including unpaid wages (including unpaid overtime), an

additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

## COUNT II
## RULE 23 NORTH CAROLINA CLASS ACTION
## VIOLATION OF THE NORTH CAROLINA WAGE AND HOUR ACT, N.C. GEN. STAT. 95-25.1, *et seq.*

112. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

113. At all times relevant to this action, Defendant was an employer covered by the overtime mandates of the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1, *et seq.*, and Plaintiff and the Rule 23 North Carolina Class members were or are employees entitled to the Act's protections.

114. The North Carolina Wage Act mandates that "[e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday." N.C.G.S. § 95-25.6.

115. At all relevant times, Defendant, pursuant to its policies and practices, failed and refused to pay Plaintiff and the North Carolina Class all owed, earned, and promised wages on their regular paydays.

116. In particular, Defendant, in violation of N.C.G.S. § 95-25.6, failed to pay all straight time wages for unpaid work during pay periods without overtimes, also known as "gap time," owed to Plaintiff and the North Carolina Class.

117. Defendant violated the North Carolina Wage Act by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 North Carolina Class members for the time spent on the work activities described in this Complaint.

118. Consequently, as a result of Defendant's unlawful policies and practices, Plaintiff and the North Carolina Class members have been deprived of compensation due and owing.

119. Defendant's failure to pay Plaintiff and the North Carolina Class all owed, earned, and promised wages, despite the fact that, upon information and belief, Defendant knew of its obligations under the law, entitles Plaintiff and the North Carolina Class to liquidated damages in an amount equal to the amount of unpaid wages under N.C.G.S. §§ 95-25.22 (al).

120. As a result of Defendant's unlawful acts, Plaintiff and the North Carolina Class have been deprived of all compensation due under the law, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C.G.S. §§ 95-25.6, 95-25.22(a), (al), and (d).

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, requests the following relief:

a. An Order certifying this case as a collective action and authorizing notice to putative collective members in accordance with 29 U.S.C. § 216(b) and with respect to the FLSA claims set forth herein (Count I);

b. An Order certifying this action as a class action (for the Rule 23 North Carolina Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's claim under the North Carolina Wage Act (Count II);

c. An Order compelling Defendant to disclose in computer format, or in print if no computer-readable format is available, the names, addresses, phone numbers, and e-mails of all proposed FLSA Collective members and Rule 23 North Carolina Class members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class and collective members of their rights by law to join and participate in this lawsuit;

d. An Order designating Plaintiff as representative of the FLSA Collective and the Rule 23 North Carolina Class, and undersigned counsel as Class counsel for the same;

e. An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f. An Order declaring Defendant's violations of the FLSA were willful;

g. An Order declaring Defendant violated the North Carolina Wage Act as cited herein;

h. An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective and the Rule 23 North Carolina Class the full amount of damages and liquidated damages available by law;

i. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

j. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

k. An Order awarding such other and further relief as this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Complaint that are so triable as a matter of right.

Date: June 16, 2026

Respectfully submitted,

*/s/ Ethan C. Goemann*
Ethan C. Goemann (N.C. Bar No. 50731)
**SOMMERS SCHWARTZ, P.C.**
One Town Square, 17th Floor
Southfield, Michigan 48076
(248) 355-0300
egoemann@sommerspc.com

Jason Thompson (P47184)*
Kathryn E. Milz (IL 6297213)*
**SOMMERS SCHWARTZ, P.C.**
One Town Square, 17th Floor
Southfield, Michigan 48076
(248) 355-0300
jthompson@sommerspc.com
kmilz@sommerspc.com

*Attorneys for Plaintiff and the Proposed Collective/Class Members*

**Pro Hac Vice Forthcoming*